Good morning. May it please the Court, I'm Ron Kent for the Petitioner. Also with me, I would like to introduce Jennifer Yu. She's from my office. She worked very hard in terms of the briefing on this matter. It's a very fine briefing. Thank you. I'll just give four points this morning. First, substantial evidence. The record is based on two inconsistency findings, supposed inconsistency findings made by the immigration judge. They are not inconsistencies when you look at the record. The first concerns when Mr. Howe was, or what type of, what time of day Mr. Howe was interrogated. In his statement that was submitted in support of his asylum application, he indicated he focused on one particular interrogation that took place at night when he was burned with a cigarette. He also says in that same statement, in the same paragraph, that during his detention, multi-week detention, he was interrogated multiple times, or numerous times. He was, it wasn't just the one time. Is there any suggestion that by saying that he was interrogated at night, on the occasion which he was interrogated at night, he was burned with a cigarette, and then later on saying that he was interrogated multiple times, that somehow he meant that he was interrogated multiple times at night? I've looked at that paragraph over and over and over, and what he seems to be saying is he starts by saying, talking about the one interrogation at night when he's burned, then he follows up by saying he was interrogated multiple times. When he testified before the IJ and was asked about that, I think it's at pages 71 to 73 of the transcript, he said that in his statement he was focusing on the one interrogation. So if you put that together, it seems that he pretty clearly was just focusing on the one interrogation when he did the statement. When he gets to the hearing before the IJ, he explains that he was interrogated four times, three times during the day, one time at night. If you go back to the statement, there is nothing in that statement which begins to lay the predicate that he said unequivocally or categorically or even suggested that all of the interrogations or none of the interrogations took place during the day. And that's really a key point because if you look at the IJ's specific finding on this issue, what the IJ took umbrage with was that the statement doesn't say anything about daytime interrogations. It doesn't say one way or another. But when he got, when Mr. Howe got to the one time at night, if you put that together, there's nothing inconsistent. It's the same, it's the same situation that if you have someone in a civil lawsuit and who is deposed and who is asked a series of questions but is not asked the key question or two so that there isn't a deposition transcript record that answers that question. So, how much deference do we give to the IJ? I mean, you've struggled here to some extent in your brief to say look, this is what this paragraph means, but you have to concede, I think, that it's not clear. You've come up with a plausible interpretation and perhaps the most plausible interpretation, but isn't the IJ who was there, was able to observe and hear and so on entitled to some deference? And isn't the question we must ask not whether your interpretation is plausible, but whether your interpretation is the only plausible one? And if we find that IJ could have read the statement differently, then he's entitled to the, she's entitled to the benefit of the doubt on that. Isn't that where we are? No. Well, it's a very good question. I think the answer to that is first, if we're talking about credibility and we're talking about the IJ's ability to judge credibility because he was physically there when that proceeding was happening, I would have expected the IJ to, in the area of the specific finding about when the interrogations took place, to have said, well, when Mr. Howe was cross-examined or examined on direct, that his, he got red or he trembled, or one of those indicia that you would, that would suggest to a judge, immigration judge, that there was, someone was not telling the truth. But if you look in the transcript at the, or in the finding about this issue, what the IJ says on credibility is that the answer, the answer was not plausible. He just doesn't like the answer. It's not anything that he perceived at the time. So I think we're all in the same position the IJ was in terms of looking what the record was. What Mr. Howe said before. Assuming we set aside or ignore the credibility finding and we accept your client's statements at face value, what's the narrative there? What, what, what, what's the narrative? What, what happened to him and, and what, and why does it amount to persecution? Why does it amount to persecution? There's a certain amount of harassment. We know that people have to put up with, from their governments. I mean, it's not our, it's not, it's not our way of life, but we can't obviously, grant asylum to everybody who, who doesn't have a government as, as, as good as ours. And I don't, I don't mean that in any facetious way at all. And we have case law that says there's a certain amount of, of being arrested, being followed, even being beaten, even being caused pain and suffering by one's government that does not amount to persecution. What is it, assuming we believe everything your client says, does that amount to persecution? Yes, absolutely. I mean, Mr. Howe testified that he was taken into custody. He was, he remained in custody for a number of weeks. He was interrogated and each time he was beaten black and blue, he was... No, no broken bones, no hospitalizations. He, he did end up going to the hospital, according to his testimony, after he was released because as a result of that cigarette burn, it hospital for, for medicine or treatment. So in fact, he was physically damaged by the treatment. And, and I would take a step back is he's in custody, he's being beaten according to his testimony. The reason that he is being beaten is because of his membership in this Falun Gong, which whether you look at as a political entity or religious entity, it clearly would qualify. Is there a country report evidence? What does it say about the Falun Gong? That it is a, um, that it is a group that is, um, subject to persecution. And I, I, I shouldn't use the word persecution. I, that may use a different word, but there is a lengthy country report in the IJ, in the record that was before the IJ. And that's another issue that if you go through the IJ's, um, uh, findings, if you go through the BIA decision, there's not a mention. I don't believe there's a mention of a country report. And this country report that's part of this record goes on in detail. It's a very long report about the repression. Is there any, is there any case, Ninth Circuit or otherwise, that, um, holds that, uh, membership in the Falun Gong, uh, is in effect, uh, per se persecution in the case of a Chinese asylum seeker? I believe there is. I believe there is. I would have to look at my brief. I think it's in our opening brief. Is it a brief? I believe it is. You've got a minute left. Would you like to say something, Butler? Uh, I would. Thank you. We'll hear from the government. Morning, Your Honors. America Miles for the United States. How are you? I'm good. How are you? Thank you. Weren't you here yesterday? Yes, I was. Can't stay away. This is my last one, I promise, this time around. The agency determined that Mr. Howe was not credible, and the evidence of record here does not compel reversal. What's the best inconsistency? I hate to cut you off. Sure. What is the most blatant inconsistency on this record? What's the worst evidence against Mr. Howe? The worst evidence, I would say, equally is both with respect to the time of day that the interrogations took place and also his testimony regarding him having to report to the police station after he was released. Okay. Let's deal with both of those. Tell me about the time of day problem. The time of day, if you look at his statement, it clearly says, page 203 of the administrative record. Which paragraph? It's in the second paragraph. I'm sorry, it's 204. It's in the first full paragraph, toward the bottom. I'm sorry, 204? Yes, page 204 of the administrative record. The paragraph says, in Shenyang. Yes, so it's toward the bottom. I'm sorry, towards the bottom of that paragraph. Of that paragraph, yes. It says, I was interrogated many times during the detention over nearly two months. Then he says, I could not get enough to eat during the day, and I suffered from the inhuman interrogations, plural, at night. And then he goes on to say, during one interrogation at night, I could not follow them because I was too sleepy, and he then sustained the cigarette burn. Which implies he had multiple interrogations at night, and during one of those multiple interrogations is when he was burned with the cigarette, according to his statement. During his testimony, when asked directly about these interrogations, he said he was interrogated four times, and they usually began at 11 a.m. And then when it was pointed out that this was inconsistent with his statement, he said, well, one of those 11 a.m., one of those morning interrogations, went into the night. And that's the one where he sustained the cigarette burn. Thus he was stating, I only had one evening time interrogation during his testimony. And then when he was asked specifically, why did you not mention that you were interrogated during the day in your statement, which is very specific in every other regard, he did not respond. He was completely unresponsive. On page 123 of the administrative record, you'll see that all he said was, I put in my statement that I was interrogated at night, I focused on the one time. But he did not address the question, why? Why did you not mention the daytime? He was unresponsive to that question. The other point of him stating that he had to report to the police station, his statement clearly says police station. He said he had to report once a week in his statement. Now, in his testimony, he again testified, when asked at first, that he had to report to the police station once a week. He was released on February 28th, and he came to the United States on April 24th, which is a period of approximately eight weeks. When he was asked how many times he reported to the police station, he said, over 10 times. It was noted to him specifically that this was impossible given the dates, that it could not have been more than eight times if it was once a week. And then he changed his answer to say, well, I also had to report to a neighborhood committee. This neighborhood committee was not in his statement. When asked how many times he reported to the neighborhood committee and the police station, he stated five to six times each. Which, again, if he reported once a week to the police station still, that does not cover the eight-week period. So he was amending his testimony as it was pointed out to him, as the IJ was required to do to let him know that his credibility was questionable. He was changing his testimony. Five to six times over the eight weeks, okay, it's a little rough. But if you have to go to two different places, that would be roughly 10 times. It would be, however, he clearly indicated police station in his statement and stated police station at first in his testimony. It was only once it was pointed out that this was an impossibility that he could have done more than 10 times that he changed it to say, well, I also had to go to this neighborhood committee. So he could make it fit within his original representation. So those are... What you just said there, well, I thought it was 10, but now that you point out it's eight, you know, I really meant eight. It seemed like 10. Isn't eight close enough to 10? No, and he said clearly over 10 also. Over 10 could be 11, so isn't eight close enough to 11? I wouldn't think so, because this is... When you're talking about being persecuted and you're talking about being fearful and fleeing for your life, I think you would remember very clearly, especially it's a small enough number of times, how many times you had to report to the authorities. I'm sorry, I don't get it. Why would sort of suffering be any different from anything else? I mean, if you had to remember eight things, eight things you did, you might say, yeah, it was more than 10. Particularly if they were traumatic experiences and they all seemed like they were, you know, they're not trivial events. I just don't see why saying more than 10 sounds... I think it's more than... Somebody who had experienced eight events might not easily say, well, it was more than 10. Well, I would emphasize that he changed his testimony to bring in this new entity, which is this neighborhood committee that was never mentioned before. That helps you some, and I think it cuts both ways, where instead of saying, yeah, you know, it seemed like 10, but okay, so maybe it was only eight, or it seemed like 11 or 12, but he brings in this other entity. So that, I guess, one could infer that he's sort of trying to patch up his testimony. Yes, that's exactly the point. It wasn't necessarily the numeric discrepancy at first, but when it was pointed out to him, he didn't say, oh, I could be wrong on the number. Instead, he brought in this whole new entity that was not mentioned in his statement and that was not at first proffered in his testimony when asked, because the word police station is very specific as to this, what is a neighborhood committee. So is the finding that there was no neighborhood committee? Do we have a finding on that? The finding was he completely lacked credibility, period. Making up the neighborhood committee? The finding was there's just no credibility here whatsoever as to any aspect of his claim. There's no finding here that he even practiced Falun Gong in China. Speaking of Falun Gong, you heard counsel's comment with respect to a country report. What's the relevance of that to this case? Here, I would say that there was no need to review the country reports because there was a complete lack of credibility here. We've been discussing the credibility issue. Put that to one side. What does the country report say? The country report does indicate that practitioners of Falun Gong, that it is an illegal practice in China, and that there have been incidents of people being detained and harmed in China because of their continued practice. Is there a case out there, again, this is the same question I asked counsel, is there a case out there that specifically recognizes Falun Gong as in this category? I believe that there is, and I don't know it offhand, and I could look at it, but there is an incircuit case. I would just also like to quickly address, there are some... Did the IG make a specific credibility finding, or a specific finding as to whether he did or did not practice Falun Gong while in China? The IG found him to lack credibility, so he did not specifically state, I find that you did not practice Falun Gong. If the IG finds him to lack credibility, does that mean then that we disbelieve everything that he said? Yes, in this case... Or even that the IG disbelieved everything he said. Yes, and the board as well. Somebody might be a liar and yet say some true things. Because we have no foundation here what to believe. The IG basically found that the entire claim lacked credibility. The burden is on Mr. Hao to demonstrate that he did in fact practice Falun Gong and that these events did happen, and the IG found that he did not testify credibly. Counsel, there are a couple of places where it seems to me that the conclusion that the IG draws, pointing out inconsistencies, is demonstrably wrong. Let me give you one example. The IG concludes that Mr. Hao was inconsistent in his testimony because at one time he testified that he started practicing Falun Gong after his father started it, and another time the IG says he testified that he started at the same time as his father, the one month discrepancy in the time that he practiced Falun Gong being significant to the IG. And as I read the record, I don't see that there's any inconsistency in his testimony at all. Now, if the IG is wrong about that, why can't I find that the IG is incredible in his own inconsistencies and not give him any deference as to anything else that he finds? I mean, I'm wondering where this whole thing ends. Sure. Well, I would first say that the IG wasn't wrong on that because there was a point where he said, I began practicing one month after, so I would say that And what he said before was that he observed his father practicing Falun Gong and he began studying it, and he saw the beneficial health effects to his father, and at another point he says that he then began practicing it some months later. But as I read the two statements and looked pretty closely at what the IG said, I don't see that the IG had any grounds for finding that there was an inconsistency there. Now, if the IG is wrong about that, could he be wrong about other things as well? And if that is your position, I would, again, this court, as long as there is one identified ground stated by the immigration judge that is material, goes to the heart of the claim, and is supported by substantial evidence, under Lee v. Ashcroft, this court must uphold the IG's adverse credibility. That's a little different from what you told us just a minute ago, counsel, because you told us that we were not to believe anything that Mr. Howe said and including that we could even doubt that he was a practitioner of Falun Gong. That's a pretty dramatic conclusion. Again, I think whether or not he was completely credible based on this record doesn't take away from the fact that the IG found him not credible in every way. One thing to say that somebody has completely overstated the grounds for asylum. But it's another thing to deny that they are a practitioner of Falun Gong at all. One could be a practitioner of Falun Gong not having suffered any significant persecution in China and the Chinese authorities perhaps not even being aware that you are a practitioner of Falun Gong. The idea that you're inconsistent in what you've said about certain incidents would be relevant, would go to the heart of the claim, and would not entitle you to asylum. But it wouldn't necessarily lead to a conclusion that you are not a practitioner of Falun Gong. That is correct. However, I would advance here that Mr. Howe did not meet his burden in demonstrating that he has in fact practiced Falun Gong when he lived in China. Did the IJ conclude that? I asked you at the beginning of your argument for your two best inconsistencies and you gave me two, I think, very relevant and troubling points about the time of day and the reporting requirement to the police station. One might doubt that he was reported as many times to the police station or that he had a requirement to report to the police station. One might doubt the number of his interrogations. Did the IJ ever find at any point that he had reason to doubt that he was a practitioner of Falun Gong? He did not make a specific finding, no. He made an umbrella finding that he did not find him credible, period. But based on that, I would advance. Because we cannot discern here what was in fact credible, what was not in fact credible based on this record. We cannot assume that... Is the government taking the position that even today he's not a practitioner, that he fakes it? No, no. The IJ even stated that it's quite possible that he has taken up Falun Gong in the United States now, but that is irrelevant to what he was doing when he was back in China and whether or not he was actually identified as a practitioner of Falun Gong by the authorities when he was living in China. Even if he did not suffer past persecution, he could be entitled as final based on future persecution. So if we accept that he is now a practitioner of Falun Gong, presumably this is something that would take with him if he were deported, doesn't the country report support influence of future persecution regardless of what may or may not have happened to him in the past? I think that that would depend. And this is a question for the agency in the first instance because it was not reached based on the adverse credibility determination. So if this Court were to determine that Mr. Hao was credible in reverse adverse credibility finding, then I would submit that the Court should remand it. I should very carefully ask you what the government's position is. And I understand that you think he's a big liar as to what happened to him in China or at least the IJ could so find. And for the purpose of this question, I'm accepting that. But I then ask you is there any doubt that he is now a practitioner of Falun Gong? And you said no, we accept that he is. So we don't have to worry about what happened to him in China in the past. He is now a practitioner of Falun Gong and we have a country report that speaks about what happens to people who practice Falun Gong. So if he goes back, he would in the future be, presumably he would take his religion with him and he would be a practitioner of Falun Gong on his return to China. So my question is, even putting aside the question of persecution, doesn't the fact that he is now admittedly, according to your concession, a practitioner of Falun Gong, doesn't that entitle him to a fining of future persecution? Again, I think there are more facts that would need to be parceled out here such as his intentions to practice if he goes back, where he would practice and what province he lives in and what type of enforcement is happening in today's environment in China as opposed to when he first came here. And again, those are all issues to be reviewed by the agency in the first instance because this is a legal determination. Why wasn't this something that was fairly presented to the agency the first time around? I mean, he did make a claim of past persecution. He also made a claim of future persecution. Why isn't this something the agency had a chance to address but failed to? The agency, again, determined that the IJ, the board determined that the IJ was correct in his address earlier. I accept that. Sure. And for purposes of this question, I am accepting that petitioner, I mean the finding, I'm accepting the finding that he did not, he's a liar, he'd never practiced Falun Gong in China. Nevertheless, that leaves on the table an answer that does not address the question of the fact that he is now a practicing member of the religion. So if he's sent back, he will be subject to future persecution. So even if the agency accepts the findings of the IJ, why was it not required to address the future persecution question? Which, again, you do not question. That he is now a practitioner of this religion. It was not raised before the board that if he were to, that he would... He did not make a claim of future persecution? He made a claim of future persecution, but he did not claim that he would practice going, if he went back to China, necessarily because those facts were not parceled out below. It was only in reference to his past practice. And the board was not required because they found him completely incredible. The board did not address whether or not the board agreed with the immigration judge that he practice Falun Gong in the future. So, thank you, Your Honor. Those are my questions. Thank you. Before the IJ, Mr. Hao testified that he had spoken with his uncle since he was in the United States. And his uncle had told him that Falun Gong members were being rounded up and that he personally should not come home because he would be arrested or worse. The issue clearly was raised. There was no finding one way or another. Related to that, there was no independent finding on credibility on the CAT claim, both at the IJ level and at the BIA level. This was a classic situation where the credibility finding on the asylum claim washed over and was the dispositive issue on the CAT claim. And there are authorities in this circuit that have involved members of this panel that have found that that in and of itself is sufficient to send the matter back. Because as the Court has pointed out, what will happen in the future or may happen to the future to Mr. Hao has to be dealt with by the Immigration Service and it has to be part of the decision. It is not what Mr. Hao might do when he goes back. The issue is what the Chinese government perceives him to be. And there is no finding that he was not practicing Falun Gong in China. There was no finding that the Chinese government, whether correct or not, does not perceive him to be a member of that outlawed group. And it would seem to me that it would just flow logically that there had to be a finding made about whether he had a well-founded concern about returning to China for the asylum claim. There also had to be an independent finding on the CAT claim. Okay, thank you. Thank you.
judges: Kozinski, O'scannlain, Bybee